NORTH AMERICAN MERCANTILE CO. ET AL. *v.* UNITED STATES

**No. 6808.**—Invoices dated Yokohama, Japan, August 23, 1935, etc.
Certified August 23, 1935, etc.
Entered at San Francisco, Calif., September 10, 1935, etc.
Entry No. 2651, etc.

(Decided January 27, 1947)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiffs.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh, James F. Donnelly,* and *Samuel D. Spector,* special attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement from values found by the appraiser of merchandise at the port of San Francisco on certain canned clams exported from Japan during the years 1935, 1936, 1937, and 1938. The appraiser's returns of value were based upon the American selling price formula found in section 402 (g) of the Tariff Act of 1930 prior to amendment by the Customs Administrative Act of 1938 (52 Stat. 1077), which is set forth in full in the margin,[1] pursuant to the proclamation of the President of the United States dated May 1, 1934, and reported in T. D. 47031.

Preliminary to taking up the issues as to the merits, I find a motion made by counsel for the plaintiffs with respect to reappraisements 119523–A and 122063–A that the "court find export value as the proper dutiable value because the appraisements are void" (R. p. 28). In support of this motion counsel offered and there were received in evidence the summary sheets attached to the invoices for the purpose of demonstrating that there was no sufficient designation by the collector of the packages to be opened and examined for the purpose of appraisement, as required by section 499 of the Tariff Act of 1930 prior to amendment by the Customs Administrative Act of 1938, the pertinent portions of which are quoted in the margin.[2]

---

[1] SEC. 402. VALUE.

\*   \*   \*   \*   \*   \*   \*

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

[2] SEC. 499. EXAMINATION OF MERCHANDISE.

\*   \*   \*   The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined. \*   \*   \*

Examination of the summary sheets referred to fails to reveal anything that by any stretch of the imagination could be considered a designation of any or all of the packages covered by the invoice. In addition, the examiner in the appraiser's office who passed upon the merchandise testified that there were 30 cases of 9-ounce cans of clams covered by the invoice in reappraisement 119523–A and that but one case was examined; that there were 20 cases of 4½-ounce cans of clams covered by the same invoice, only one of which was examined; that there were 20 cases of 9-ounce cans of clams covered by the invoice involved in reappraisement 122063–A, only one of which was examined; and that there were 20 cases of 4½-ounce cans of clams covered by the same invoice, only one of which was examined.

Both of the appeals for reappraisement referred to relate to merchandise appraised prior to the effective date of the Customs Administrative Act of 1938. It has been repeatedly held that the provisions for designation and examination contained in section 499, as they were in force prior to amendment by the said Customs Administrative Act, were mandatory and that in the event of failure to comply with them the appraisement should be declared null and void. See *North American Mercantile Co.* v. *United States*, 13 Cust. Ct. 409, Reap. Dec. 6072, and cases therein cited. This case is distinguished from the case of *North American Mercantile Co.* v. *United States*, 18 Cust. Ct. 258, Reap. Dec. 6695, decided January 3, 1947 (reappraisement No. 119513–A), wherein it appeared that although there was a failure on the collector's part to designate any particular package, that officer did designate and the appraiser actually examined not less than the statutory quantity of the merchandise. Here there was neither designation nor examination of such quantity, and following the authorities cited, I hold the appraisements in reappraisements 119523–A and 122063–A to have been null and void *ab initio*.

I am, however, unable to grant the motion of counsel for the plaintiffs that the "court find export value" in these cases. Under the state of the law, as I understand it to have existed at the time the appraisements herein were made, and which I believe binds me in these cases, upon a showing that the appraisements were void, it is the court's duty so to declare, and under the circumstances of these cases at the present stage there is no authority for the court to find values. *United States* v. *Daniel F. Young, Inc.*, 27 C. C. P. A. 124, at page 131, C. A. D. 73. See also in this connection the decision of the third division of this court in the *North American Mercantile Co.* case reported in 13 Cust. Ct. at page 409, *supra*, wherein the precise question was discussed by the division and decided adversely to the plaintiff's contention. The motion made by counsel for the plaintiffs is therefore denied, and judgment will issue declaring the appraise-

ments made in the cases of reappraisements 119523–A and 122063–A to have been null and void *ab initio*.

Save for the times of exportation, the merchandise and issues in the two remaining cases, reappraisements 126627–A and 130413–A, appear to be in all respects identical with those the subject of the case of *Mutual Supply Co.* v. *United States*, reappraisement No. 134781–A, decided concurrently herewith, which record was, by agreement of counsel and approval of the court, incorporated as part of the record herein.

Briefly stated, the Presidential proclamation referred to, made under authority contained in section 336 of the Tariff Act of 1930 and which antedates the importations in question, required that assessment of duty on imported clams other than razor clams packed in airtight containers, be based upon the American selling price as defined in section 402 (g) of like or similar clams manufactured or produced in the United States. The imported clams were of a variety known as "hokki" or "hokkigai," and the appraiser based his appraisement thereof upon what he determined to be the American selling price of a domestic clam known as a "whole butter" clam, considered by him to be like or similar to the imported article.

As more fully set out in my decision in the *Mutual Supply Co.* case, *supra*, it is a condition precedent to application of the Presidential proclamation and use of the American selling price formula that a domestic article like or similar to the imported article and fulfilling the statutory terms of that formula exist or be producible at the time of exportation of the imported article. Among the contentions made by counsel for the plaintiffs herein, and upon which evidence was offered, is one that there was no domestic article like or similar to the imported article at the times of exportation upon which calculation of the American selling price could be based.

The evidence found in the incorporated record, in my opinion, fully supports plaintiffs' contention in this regard (see opinion in *Mutual Supply Co.* v. *United States, supra*), and the additional evidence offered on the point in the case at bar corroborates the evidence in the incorporated case and confirms the ultimate fact that the imported canned hokkigai clams were not like or similar to domestic canned clams, from which the conclusion follows that the imported canned clams were not within the purview of the Presidential proclamation cited.

In this situation the valuation for tariff purposes of the clams in issue is governed by the ordinary value provisions of the tariff act, namely, section 402 (a) to (f). There is in the record a stipulation of counsel to the effect that the invoice values represented the export value and that foreign value was not higher.

Accepting this stipulation as a stipulation of fact, I hold that export value as defined in section 402 (d) of the Tariff Act of 1930 is the proper basis of value for the canned clams involved in reappraisements 126627–A and 130413–A, and that such export values in each case are the invoice unit prices.

Judgment will issue accordingly.