SAMUEL S. PERRY *v*. UNITED STATES

**No. 7794.—**
Entry No. 10874, etc.

(Decided February 9, 1950)

*Philip Stein* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

MOLLISON, Judge: The appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof, are from values found by the United States appraiser on certain rattan furniture imported into the United States from China. Preliminary to taking

the cases up on the merits, I find that the issue of the jurisdiction of the court to find values for the merchandise involved has been raised by counsel for the plaintiff, who points out in the brief filed on behalf of the plaintiff that in five of the nine entries involved the collector of customs failed to designate the place where the packages or quantities designated for opening and examination for the purpose of appraisement were to be sent for such purpose. It is contended that such failure voids the appraisements in those cases.

Counsel further points out that importation and entry in each of the five cases took place prior to the effective date of the Customs Administrative Act of 1938 (52 Stat. 1077; 74 Treas. Dec. 17, T. D. 49646), and cites and quotes the following sentence found in section 499 of the Tariff Act of 1930 (19 U. S. C. 1934 ed. § 1499) as it existed prior to the enactment of the Customs Administrative Act of 1938, *supra*:

* * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. * * *

It will be noted that counsel for the plaintiff has not alleged that the designations were insufficient because of the failure to designate the *number* of packages or the *quantities* called for by the statute or regulations, but the issue of jurisdiction is raised upon the ground that the collector failed to designate the *place* where the examinations were to be made.

Counsel for the plaintiff has cited the cases of *Central Vermont Railway Co. (International Milling Co.)* v. *United States*, 71 Treas. Dec. 1237, Reap. Dec. 4010; *Sabine Transportation Co., Inc., et al.* v. *United States*, 1 Cust. Ct. 641, Reap. Dec. 4409; *United States* v. *Stauffer Eshleman & Co., Ltd., et al.*, 9 Cust. Ct. 641, Reap. Dec. 5732; and *William J. Oberle, Inc. (European Agencies Co., Inc.) et al.* v. *United States*, 19 Cust. Ct. 234, Reap. Dec. 7361.

In all of the cases cited, as well as in other cases cited therein, where the appraisements were held to be void by reason of failure to designate or insufficient designation, such failure or insufficiency related to the *number* of packages or *quantities* required to be designated, and not to a failure to designate the *place* of examination. It is true that in the *Sabine* case, *supra*, a single judge of this court, sitting in reappraisement, stated:

There are two designations that the collector must make: (1) The number of packages that must be opened and examined and (2) the place at which this duty shall be performed. * * *

Under the particular facts of that case, however, I do not construe the language above quoted as a holding that the duty of the collector

to designate the place of examination is mandatory, and I have been unable to find a single case wherein it has been held that the failure of the collector to designate the *place* of examination was fatal to an appraisement.

I observe that the statute required the collector to—

\* \* \* order such packages or quantities to be sent to the public stores or other places for such purpose.

Regulations prescribed by the Secretary of the Treasury in connection with section 499, *supra*, being article 312 (*b*), as amended, of the Customs Regulations of 1937, read as follows:

In the appropriate spaces on customs Form 6417 the collector shall designate, by marks and numbers, if any, and with respect to each invoice, the packages to be examined and the place where the examination is to be made *if elsewhere than at the public stores.*   [Italics mine.]

thus indicating that the omission of an order designating a special place for examination was considered by the Treasury Department the equivalent of designating the public stores as the place of examination.   The counterpart regulation, section 8.22 of the Customs Regulations of 1943, is substantially the same.

In reply to the contention of counsel for the plaintiff, counsel for the defendant cites and quotes the provisions of section 499 of the Tariff Act of 1930, as amended by section 16 (a) of the Customs Administrative Act of 1938, as follows:

No appraisement made after the effective date of the Customs Administrative Act of 1938 shall be held invalid on the ground that the required number of packages or the required quantity of the merchandise was not designated for examination, or, if designated, was not actually examined, unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.

It is obvious that the foregoing provisions of law are not applicable to the issue raised by plaintiff's counsel which, as has been said before, is not that the designations were insufficient because of failure to designate the *number* of packages or the *quantities* to be examined, but is that they failed to designate the *place* of examination.   None of the situations covered by the provisions above quoted is involved here.

The rationale of the decisions holding void appraisements in cases where there was a failure on the part of the collector to designate the required number of packages or quantities for examination is that such designation is the very foundation of appraisement and was intended for the protection of the importer and the Government alike.   The appraiser can make no appraisement unless he has something representative of the subject matter before him upon which to base his

return. Nothing can be substituted for the physical presence of such portion of the importation which the statute requires to be made available for examination and no method of selecting such portion other than that prescribed by the statute may be used.

On the other hand, the provision that the collector shall order the examination packages or quantities to be sent to the public stores or other place for such examination is merely a matter of *convenience*. The examination packages or quantities would be the same no matter where the examination took place, and there is no question of protection of the rights of importers or of the Government involved. Such a provision is not of the nature of the provision for the designation of numbers of packages or quantities to be examined, and I, therefore, hold that, nothing else appearing, the failure on the part of the collector in the cases involved to designate the place of examination did not void or otherwise impair the appraisements made.

The issue on the merits is concerned with the dutiable status of an item of 10 per centum buying commission which appears on each of the invoices. On entry in each case this item was deducted as a nondutiable item, and on appraisement it was added back. There is no dispute that export value, as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), is the proper basis of value, the only element in question being the item referred to.

The plaintiff relies upon the statements made in the consular invoices by the exporter to establish his contention with respect to the commission in question, and offered no other evidence at the trial of the issue. In view of the fact that the invoice statements denominating the item as a buying commission are directly contradicted by the appraiser's action, I am of the opinion that the invoice statements, standing alone, do not constitute proof of the facts sufficient to overcome the presumption of correctness attaching to the appraised value. *United States* v. *Albers Bros. Milling Co. et al.,* 35 C. C. P. A. 119, C. A. D. 380, and cases therein cited.

Decision, however, need not rest on that ground alone. There was offered in evidence by counsel for the defendant a report of a Treasury representative dated October 17, 1938, containing an account and the results of an investigation made by him at the places of business of several shippers of rattan furniture from China, among them the shipper here in question. Objection to the receipt of the report in evidence was made by counsel for the plaintiff on the ground of remoteness, and decision on its admission was reserved, it being marked as exhibit 1 for identification.

A perusal of the report indicates that it has specific reference to at least five of the nine entries involved herein, and covers the period

during which the shipments which gave rise to the entries here involved were made. The objection to its admission is therefore overruled, and the report is admitted in evidence as exhibit 1, and an exception to this ruling is granted the plaintiff.

Exhibit 1 shows that the shipper was the manufacturer of the furniture in question and not a buying agent, and that the relationship between the importer and shipper was that of buyer and seller. Under such circumstances, the so-called item of buying commission was a charge made by the manufacturer of the goods and in no sense a true buying commission. On the record presented, it is part of the value of the furniture.

On the record before me I find as facts:

(1) That the merchandise involved consists of rattan furniture exported from China during the period from July 1937 to June 1938.

(2) That at the time of exportation of the merchandise involved there was no market value or price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, or that such market value or price was not higher than the market value or price specified in finding of fact (4) here following.

(3) That the item of 10 per centum buying commission appearing on each of the invoices herein was not in fact a buying commission.

(4) That at the time of exportation of the merchandise involved the market value or the price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the appraised value in each case.

I conclude as matters of law:

(1) That export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value of the merchandise involved, and

(2) That such value was the appraised value in each case.

Judgment will issue accordingly.